**Richmond.**

JORDAN & OTHERS V. LIGGAN & OTHERS.

FEBRUARY 10, 1898.

Absent, Cardwell, J.

1. CHANCERY PLEADING—*Multifariousness—Fraud.*—No general rule can be laid down as to what constitutes multifariousness. In cases involving the question of fraud great latitude is allowed both as to the circumstances charged, and the parties impleaded, provided one connected scheme of fraud be averred. If justice can be conveniently administered by the mode of proceeding adopted, the objection of multifariousness will not lie, unless it iš so injurious to one party as to render it inequitable and unjust to accomplish the general good at his expense.

2. CHANCERY PLEADING—*Multifariousness—Fraudulent Conveyances.*—A bill is not obnoxious to the objection of multifariousness which charges that a deed of trust which it assails confers on the trustee powers inconsistent with his duty to the creditors secured, and adequate to defeat the trust, and also charges that one of the debts secured is fraudulent, narrating the circumstances which lead up to the latter 'charge. The narrative is surplusage.

3. CHANCERY PLEADING—*Multifariousness—Several Causes of Action—Causes not Sufficiently Stated.*—In order that a bill may be multifarious, as presenting several causes of action, it is necessary not only that the different grounds must be wholly distinct, but each must be sufficient as stated in the bill. If either is, for any reason, insufficient, it will be treated as a nullity, and the court may proceed to act on the ground sufficiently stated.

4. FRAUD—*How Charged—How Proved.*—Fraud must be alleged, as well as proved. It cannot be stated argumentatiyely. The charge must be direct, and the proof clear.

Appeal from a decree of the Corporation Court of the city of Lynchburg, pronounced January 11, 1896, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The deed sought to be set aside was a deed made by Charles W. Liggan and Willis N. Liggan, partners trading and doing business under the style and firm of the "Rivermont Furniture Company." The new firm composed of O. N. Sutton and Mrs. M. L. Liggan, did business under the style of "Rivermont Furniture Manufacturing Co."

Amongst the debts sought to be secured by the deed of trust was one to B. E. Hughes for the sum of $975. With reference to this debt the bill charges: "That the sum secured in the first class of the creditors to B. E. Hughes amounting to the sum of $975.00 was a debt due by Mrs. Liggan, wife of said W. N. Liggan, to said Hughes for the purchase price of property bought of said Hughes, by said Mrs. Liggan, and conveyed by him to her, and not a debt of the company to him, except probably, as surety of said Mrs. Liggan, and if the said debt is paid out of the funds of the said company, your complainants are entitled to be substituted to the lien of the said Hughes on the said property, and have a personal decree for the said sum against said Mrs. Liggan."

*V. E. Howard, J. W. Harvey* and *J. E. Edmunds,* for the appellants.

*Blackford, Horsley & Blackford* and *J. E. Hughes,* for the appellees.

KEITH, P., delivered the opinion of the court.

Jordan and others, creditors of Charles W. and Willis N. Liggan, filed their bill in the Corporation Court of the city of Lynchburg attacking a deed made by the Liggans to J. Emory Hughes, trustee, to secure certain creditors therein named, alleging that it was made with intent to hinder, delay, and defraud the plaintiffs. The trustee and creditors secured in the deed were made parties defendant. The defendants filed a de-

murrer to the bill, and, the cause coming on to be heard, the demurrer was sustained, and the bill dismissed. Thereupon an appeal was applied for and obtained.

The objection taken to the bill upon the part of the defendants in the court below is that it is multifarious. It is conceded that, in cases involving the question of fraud, a very great latitude is allowed in pleading; that circumstances however various may be set forth, and parties however numerous be impleaded in the same bill so long as one connected scheme of fraud is alleged.

Courts seek to discourage a multiplicity of suits and will not permit the objection of multifariousness to prevail where there is no liability to injustice. See *Yates* v. *Law*, 86 Va. 123; *Gaines* v. *Chew*, 2 Howard 619.

It has been said that it was impossible for courts to lay down a general rule as to what constitutes multifariousness; that they are left to decide each case upon its own circumstances, governed only by a sound discretion. *Belton* v. *Apperson*, 26 Gratt. 207.

"Courts in dealing with this question look particularly to convenience in the administration of justice, and if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense." *School Board* v. *Farish*, 92 Va. 160.

We come now to apply these principles to the case before us.

The plaintiffs filed their bill, and, before any appearance on the part of the defendants, filed an amendment to it in the clerk's office. There was much controversy at the bar as to whether this paper subsequently filed constituted "an amendment to the original bill," or what is known as an "amended bill." Were it necessary to decide this question it would present some difficulty, but, in the view we have taken of the case, the distinction becomes unimportant.

To the bill as originally filed the only objection stated is that it is multifarious, because, after stating the principal ground of

attack upon the deed, which is that it confers upon the trustee a power inconsistent with his duty to the creditors secured, and adequate to the complete defeat of the trust, it proceeds as follows: "Your complainants further show unto the court that immediately prior to the assignment of the said grantors, the said grantors were engaged in a prosperous liquor business with one William Cotter, in which said business they were trading under the firm name of William Cotter & Company; that immediately preceding the assignment they sold their interest in this business to said Cotter for a large sum of money, the amount of which your complainants do not know, which sum of money, so realized, the said grantors did not apply to the payment of their debts, but, put the same out of the reach of your complainants. Your complainants further allege that in the second class there is secured to William Cotter & Company the sum of $253.75, which said debt your complainants believe, and therefore charge, has no existence in fact; and there may be other debts preferred in said deed which do not exist."

This quotation from the bill we understand as simply constituting an allegation that the debt secured to Cotter & Co. is fraudulent, and the narrative which leads up to this charge being a wholly unnecessary elaboration, may be treated as surplusage, and does not constitute multifariousness.

The paper filed as an "amendment to the bill," or as an "amended bill," as the case may be, contains the recital that since the institution of this suit the trustee in the deed of trust, in order to avoid the appointment of a receiver and the destruction of his office as trustee, sold the business to one O. M. Sutton and to Mrs. M. L. Liggan, wife of W. N. Liggan, who are now conducting the business under the name of the "Rivermont Furniture Manufacturing Company"; that very recently the complainants have been informed that for several months prior to the assignment of the Rivermont Furniture Co. said company sold a large quantity of goods for cash, and collected a large sum of money from the sale, which sum of money should have

been an asset of the company to be used in the payment of its debts, yet, at the time the assignment was made there was no money in hand, in bank, or in sight, or accounted for in any way, to be so applied; that the morning after the assignment W. N. Liggan showed a roll of bills to various parties, which he at the time stated amounted to the sum of $3,000, and further stated that he held this sum for his own purposes, and as it was cash in his pocket his creditors could not get at it; that it was probable that the said $3,000 so held by W. N. Liggan, just succeeding his assignment, is the money which was used by him for his wife in the purchase of the said business and factory, which is now being conducted under the name of the "Rivermout Furniture Manufacturing Company."

It is claimed by appellees that these allegations with respect to the dealing of the trustee with Sutton and Mrs. Liggan make the bill multifarious, because it involves the investigation of a transaction wholly separate and distinct from the deed of trust which is the subject of attack in the bill as originally filed, and constitutes an independent fraud, in itself a complete cause of action between parties different from those involved in the transaction as originally stated.

We do not so regard it. In order that a bill may be multifarious as presenting several causes of action, it is necessary "not only that the different grounds of suit must be wholly distinct, but each ground must be sufficient as stated in the bill." Story's Eq. Pl. (8th Ed.), secs. 275-6.

As was said by Staples, J., in *Snavely* v. *Harkrader*, 29 Gratt. 126: "If the relief sought upon one ground, distinct and independent of the other, is such that a court of equity cannot grant, either for want of jurisdiction, or because of the form in which it is sought, this latter will be treated as a nullity; and the court may proceed to act upon that ground of suit stated in the bill which is well stated. In such a case the bill will not be declared multifarious, but the court will treat the bill as if it did not contain the allegations setting up the second ground of relief, because by itself no such case would be maintained."

It can hardly be contended that a case is made against Sutton and Mrs. Liggan in the quotation which we have given from the bill upon which relief against them could be decreed. Fraud must be alleged, as well as proven, and it will not do to state it argumentatively. The charge must be direct as the proof must be clear. It is not sufficient to say that "it is probable that the said $3,000 so held by W. N. Liggan is the money which was used by him in the purchase of the said business and manufactory." That is language which suggests a suspicion, but does not constitute an averment upon which defendants would be required to take issue.

Nor do we think that the statement of the bill with reference to the sum secured to be paid to B. E. Hughes makes the bill multifarious. It may very well be that Mrs. Liggan was, as to that debt, the principal, and that W. N. and Charles W. Liggan were the sureties, and, if paid by them or out of their property, that the trustee would be entitled to be subrogated to the rights of B. E. Hughes, and recover back the money thus paid for the benefit of the trust confided to him. As this constitutes but a part of the original transaction, it may with propriety be investigated in this suit.

We are of opinion that while the bill, taken as a whole, or treated as an original and an amended bill, cannot be commended as an example in pleading, its faults are not such as that a demurrer to it should have been sustained.

The decree of the Corporation Court must be reversed, and the cause remanded with leave to the defendants to answer.

*Reversed.*