## FULTON V. COX AND OTHERS.

### September 9, 1915.

1. FRAUDULENT. CONVEYANCES—*Unreasonableness—Inadequate Consideration—Case in Judgment.*—A person who is capable of making a deed is the disposer of his own property, and his disposition thereof cannot be interfered with, whether it be deemed reasonable or unreasonable. Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity, and ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be clearly made to appear. In the case in judgment, the evidence is conflicting as to the value of the property sold and conveyed, but if the consideration was inadequate at all, it was not so inadequate as to indicate fraud.

2. EQUITY PLEADING—MULTIFARIOUSNESS.—In determining whether or not a bill is multifarious, the courts look particularly to convenience in the administration of justice, and if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense.

3. EQUITY PLEADING—*Allegation and Proof Must Correspond—Case in Judgment.*—On a bill filed by the heirs of grantor to set aside as fraudulent a deed made to his grantee, the court has no power, after holding the deed valid, to set aside a subsequent lease by the grantee to the grantor which was not in any way mentioned or assailed in the bill, but, upon holding the deed valid, should dismiss the bill. The allegations and proof must correspond. A recovery will not be allowed upon a case, although proved, which differs esentially from that alleged in the bill.

Appeal from a decree of the Circuit Court of Grayson county. Decree for the complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*W. S. Poage, R. L. Kirby, J. H. Rhudy* and *J. D. Perkins,* for the appellant.

*J. S. Bourne, J. M. Parsons* and *H. A. Cox,* for the appellees.

HARRISON, J., delivered the opinion of the court.

It appears from the record that Benjamin F. Cox owned a farm in Grayson county, containing 209 acres, upon which he lived with his wife. The couple were advanced in life, the husband about seventy-two years of age and his wife his senior. They were childless and seem to have had little, if any, esteem or affection for their relatives. They lived alone and had come to the conclusion that they needed the assistance of some one who would live with them. Accordingly they executed a deed, dated January 2, 1905, by which they conveyed their farm to J. M. Bolt and Bettie, his wife, jointly, reserving to themselves the control of the land during their lives, and providing that the deed in favor of the grantees was only to take effect at their death They had raised the wife of Bolt, and the grant was evidently intended as a gift, the consideration set forth being insignificant. While the deed does not say so, it seems to have been the understanding that Bolt and his wife should move into the Cox home where they could care for and assist these old people. This they did, but in a short time the grantor became dissatisfied with the arrangement and anxious to sell his farm and change his place of residence. After some negotiation J. M. Bolt and wife agreed to reconvey him the title to the farm in consideration of $400. He thereupon, by deed dated August 15, 1905, sold and conveyed the farm to the appellant, R. C. Fulton, the consideration

for the conveyance being stated on the face of the deed to be $2,000 cash. The evidence, however, shows that the grantee only paid Cox $100 in cash, assumed the payment of the $400 due from Cox to Bolt and gave Cox his note for the remaining $1,500, payable on the first day of the following February. In three weeks after this sale was consummated, Cox applied to his grantee, Fulton, to know if some arrangement could not be made by which he and his wife would not have to leave the place during their lifetime, saying that he had failed to find another place "to his liking," that his wife had decided that she did not wish to leave the old home, and that all they wanted was to be permitted to remain there during their life. After some negotiations the parties executed a contract of lease, dated September 7, 1905, by which, in consideration of $1,600, Fulton leased the farm to Cox and wife for the term of their natural lives. This *status* continued until March, 1909, when Cox died, his wife following him in a few days, having occupied the farm under the lease agreement mentioned for three and one-half years.

After the death of Cox and wife the appellant, Fulton, took possession of the farm under his deed from them which had been promptly recorded. Six months after the death of the Coxes and more than four years after the execution and delivery of this deed to Fulton, numerous heirs at law of B. F. Cox filed the bill in this cause, alleging that the deed in question was void because obtained by fraud, that the grantor therein did not have mental capacity to execute a deed, and that the price agreed to be paid for the property thereby conveyed was inadequate. These allegations were flatly denied by the answer of the appellant, and upon the hearing the circuit court held that they were not sustained by the evidence. This ruling of the lower court is assigned here as cross-error by the appellees

and will be disposed of at this point before proceeding to a consideration of the errors assigned by the appellant.

: We are of opinion, after a careful examination of the record, that the appellees have failed to carry the burden which rests upon them to establish the charge of fraud alleged in their bill. That Cox was competent to make and execute contracts and deeds in 1905, and up to the time of his death, satisfactorily appears. The evidence is conflicting as to the value of the property sold and conveyed to Fulton, but its consideration justifies the conclusion that, if inadequate at all, it was not sufficiently so to constitute an *indicium* of fraud: Cox being competent to dispose of his property and make the deed here assailed, it is a matter of no consequence that others may think that he acted unwisely. He is the disposer of his own property and his disposition thereof cannot be interfered with, whether it be deemed reasonable or unreasonable.

"Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear." *Matthews* v. *Crockett, &c.,* 82 Va. 399.

Under the transaction of Cox with the Bolts his desire was to dispose of his property subject to his use thereof for the joint lives of himself and wife. Under his transaction with the appellant the same desire was manifest, and he died with that purpose accomplished, and so far as appears without any wish to alter it.

We are further of opinion that the court did not err, as contended by the appellant, in overruling his demurrer to the bill upon the ground that it was multifarious. This court has so often announced its views touching the subject of multifariousness that further repetition of principles, now considered as settled, is deemed unnecessary. Courts in dealing with this question look particularly to

convenience in the administration of justice; and if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie, unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense. *School Board, &c.* v. *Farish*, 92 Va. 156, 23 S. E. 221; *Jordan* v. *Liggan*, 95 Va. 616, 29 S. E. 330; *Garrett* v. *Finch*, 107 Va. 25, 57 S. E. 604; *Baker* v. *Berry Hill Co.*, 109 Va. 776, 65 S .E. 656.

Applying a rigid test to the bill before us, we do not perceive that it is liable to the objection of multifariousness.

The decree complained of, after holding (as we think properly) that the deed of August 15, 1905, from Cox and wife to the appellant was a valid deed, then proceeded to hold that the contract of lease, already mentioned, entered into by the appellant with B. F. Cox was fraudulent and void, and that the bond executed by Fulton as part of the purchase money for the farm, although surrendered by Cox, was valid and that it could be withdrawn from the papers of the cause by the heirs of B. F. Cox for collection by them.

We are of opinion that, under the facts and pleadings here presented, this ruling cannot be sustained. It is by no means clear that there was any fraud in connection with this lease contract. The deed was a completed and recorded instrument, having no relation whatever to the lease contract which was entered into several weeks later, and embodied a proposition voluntarily submitted by Cox and not suggested by the appellant. It is true that the early death of Cox and wife after the execution of the lease contract caused it to result to the advantage of the appellant, but the life tenants under that contract might have lived many years longer, thereby greatly reducing the benefits, if any, to be derived therefrom by the appellant. The Coxes had secured all that they contracted for or desired, as stated

by them, namely, the use and enjoyment of the property during their joint lives.

If, however, there had been any fraud in the procurement of this lease contract, it was not a matter in issue in this case and the court was, therefore, without authority to declare the same fraudulent. There is no question that fraud must be alleged before it can be availed of to set aside a contract. The only fraud alleged in the bill before us relates specifically and exclusively to the deed of August 15, 1905, from Cox and wife to the appellant. The lease contract is not mentioned or in any manner referred to in the bill, the prayer of which is that the court would declare the deed fraudulent and void, and would sell the land conveyed thereby for a division of the proceeds among the heirs at law of B. F. Cox. At the time the lease contract of September 7, 1905, was entered into the appellant was the undisputed owner of the land, as shown by his deed of record, and had the undoubted right to accept the proposition submitted by Cox which was to secure to himself a life estate in the land, and Cox had an equal right, as the consideration for such life estate, for himself and wife, to surrender the $1500 bond which appellant had executed on account of the *fee simple* in the land. As already seen, the deed was a completed and recorded transaction having no relation whatever to the lease contract, which only got into the record through the evidence of a witness for the appellant. The lease contract not being an issue in the case, the court, after holding valid the deed assailed, which was the only issue presented by the pleadings, should have dismissed the bill. The complainants made one case by their bill and the court decreed in their favor upon an entirely different case.

In *Wren* v. *Moncure*, 95 Va. 369, 28 S. E. 588, this court, speaking through Judge Riely, says: "In a court of equity as well as in a court of law, the allegations and proofs must

agree. A recovery will not be allowed upon a case, although proved, which differs essentially from that alleged in the bill. . . . If this were not so, as has been aptly said, the pleadings, instead of being a shield to protect parties from surprise, would be a snare to entrap them. . . . The rule that the decree must conform to the allegations, as well as to the proofs, is not only one which justice requires, but one which necessity imposes on courts."

The decree appealed from must be reversed, and this court will enter such decree as the circuit court should have entered, dismissing the complainants' bill with costs.

*Reversed.*